**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**

---

| | |
|---|---|
| ELAINE WANG, | : |
| | : |
| Plaintiff, | : Civil Action No. 4:18-cv-00085 |
| | : |
| v. | : |
| | : **COMPLAINT FOR VIOLATIONS OF** |
| ENDOCYTE, INC., JOHN C. APLIN, PH.D., | : **SECTIONS 14(a) AND 20(a) OF THE** |
| COLIN GODDARD, PH.D., MARC KOZIN, | : **SECURITIES EXCHANGE ACT OF** |
| PHILIP S. LOW, PH.D., PATRICK | : **1934** |
| MACHADO, FRED A. MIDDLETON, | : |
| LESLEY RUSSELL, MIKE A. SHERMAN, | : **JURY TRIAL DEMANDED** |
| DAWN SVORONOS, | : |
| | : |
| Defendants. | : |

---

Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Endocyte, Inc. ("Endocyte or the "Company"), the members Endocyte's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Endocyte by Novartis AG and certain of its affiliates ("Novartis").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading preliminary proxy statement (the "Proxy") to be

filed on October 31, 2018 with the SEC and disseminated to Company stockholders. The Proxy recommends that Company stockholders vote in favor of a proposed transaction whereby Edinburgh Merger Corporation ("Merger Sub"), a wholly owned subsidiary of Novartis, will merge with and into Endocyte, with the Company continuing as a wholly owned subsidiary of Novartis (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each Endocyte common share issued and outstanding will be converted into the right to receive $24.00 in cash (the "Merger Consideration").

3.     As discussed below, the consideration Endocyte stockholders stand to receive in connection with the Proposed Transaction and the process by which Defendants propose to consummate the Proposed Transaction are fundamentally unfair to Plaintiff and the other common stockholders of the Company. Defendants have now asked Endocyte's stockholders to support the Proposed Transaction in exchange for inadequate consideration based upon the materially incomplete and misleading representations and information contained in the Proxy, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy contains materially incomplete and misleading information concerning the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction. The financial projections were also utilized by Jefferies LLC, the financial advisor to the Company ("Jefferies"), and to Centerview Partners LLC the financial advisor to the Company, the Special Committee, and the Board ("Centerview") in conducting the valuation analyses in support of the fairness opinions by each advisor.

4. It is imperative that the material information that has been omitted from the Proxy is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Endocyte's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Endocyte in headquartered in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Endocyte common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant John C. Aplin, Ph.D. ("Aplin") has served as a member of the Board since 2003 and as Chairman of the Board since May 2011.

11. Individual Defendant Colin Goddard ("Goddard") has served as a member of the Board since 2013.

12. Individual Defendant Marc Kozin ("Kozin") has served as a member of the Board since 2012.

13. Individual Defendant Philip S. Low ("Low") is one of the Company's founders and has served as Endocyte's Chief Science Officer since 1998 and has served as a member of the Board since 1995.

14. Individual Defendant Patrick Machado ("Machado") has served as a member of the Board since February 2018.

15. Individual Defendant Fred A. Middleton ("Middleton") has served as a member of the Board since July 2001.

16. Individual Defendant Lesley Russell ("Russell") has served as a member of the Board since 2013.

17. Individual Defendant Mike A. Sherman ("Sherman") is the Company's Chief Executive Officer ("CEO") and President and has served as a member of the Board since 2016. Sherman succeeded Ron Ellis, one of the Company's original founders who resigned in June 2016. Sherman was the Company's Chief Financial Officer from 2006 to 2016 and the Company's Chief Operating Officer from 2014 to 2016.

18. Individual Defendant Dawn Svoronos ("Svoronos") has served as a member of the Board since May 2018.

19. Defendant Endocyte is incorporated in Delaware and maintains its principal offices at 3000 Kent Avenue, West Lafayette, Indiana 47906.  The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "ECYT."

4

20. The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants".

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction Undervalues Endocyte

21. Endocyte is a biopharmaceutical company. The Company is engaged in developing therapies for the treatment of cancer and inflammatory diseases. Endocyte uses its technology to create small molecule drug conjugates (SMDCs) and companion imaging diagnostics. It is developing Vintafolide, a SMDC that is in Phase IIb clinical trial to treat non-small cell lung cancer; EC1456, which is in Phase I dose escalation trial for the treatment of advanced solid tumors; and EC1169, a tubulysin therapeutic that is in Phase I dose escalation trial to treat advanced metastatic castration-resistant prostate cancer. The company's products in pre-clinical development include EC2629, a folate receptor-targeted SMDC for use in treating cancer; EC2319 for the treatment of inflammatory diseases; EC0371 for treating polycystic kidney disease; and SMDC bi-specific adaptor chimeric antigen receptor T-cell for the treatment of immunotherapy in cancer.

22. On October 17, 2018, Endocyte announced the Proposed Transaction:

> WEST LAFAYETTE, Ind., Oct. 18, 2018 (GLOBE NEWSWIRE) -- Endocyte, Inc. (Nasdaq:ECYT), a biopharmaceutical company developing targeted therapeutics for cancer treatment, today announced that it has entered into an agreement and plan of merger with Novartis AG ("Novartis") pursuant to which Novartis will acquire Endocyte for $24 per share, or a total equity value of approximately $2.1 billion, in cash. This offer represents a premium of 54% percent to Endocyte's closing price of $15.56 on October 17, 2018. The transaction was unanimously approved by the board of directors of Endocyte.
>
> "Since acquiring exclusive worldwide rights to develop and commercialize PSMA-617 agents in 2017, the entire Endocyte team, along with our partners, have worked tirelessly to build a leading radioligand (RLT) portfolio and create value for patients

and shareholders alike. We are thrilled that Novartis recognizes the potential for 177Lu-PSMA-617 to change the treatment landscape for men with metastatic castration-resistant prostate cancer (mCRPC), as well as the broader role that RLTs may potentially play in the treatment of cancer," said Mike Sherman, president and CEO of Endocyte. "The global reach and expertise of Novartis in developing and commercializing RLT therapies will be critical in efforts for patients to benefit from these therapies as quickly as possible."

Completion of the transaction is expected in the first half of 2019, subject to approval by Endocyte stockholders, antitrust and regulatory approvals and other customary closing conditions. Until that time, Endocyte will continue to operate as a separate and independent company.

Centerview Partners LLC is acting as lead financial advisor to Endocyte. Jefferies LLC is also acting as financial advisor to Endocyte. Faegre Baker Daniels LLP is acting as legal counsel to Endocyte.

23. The Merger Consideration undervalues the Company's shares in light of its recent financial performance and prospects for future growth. More specifically, Endocyte reported an 8% increase in revenues for the second quarter of 2018.

24. The Company has also been focusing on developing a drug for prostate cancer, the compound called 177-Lu-PSMA-617, which is viewed as a widely promising therapy for serious condition called castration-resistant prostate condition. Novartis has said that it considers the drug as a potential blockbuster, and could generate sales of more than $1 billion a year. The drug is showing promising results in mid-state clinical trials and is currently in late-state testing.

25. Earlier this year, the Company announced that it had reached an agreement with federal regulators that could accelerate development of 177-Lu-PSMA-617. On this news, Endocyte's stock increased tenfold.

26. Accordingly, the Company is well-positioned for financial growth and the Merger Consideration fails to adequately compensate Company stockholders by cutting off their ability to benefit from the Company's continued growth and success on Lu-PSMA-617 development.

27. Despite the inadequate Merger Consideration, the Board has agreed to Proposed Transaction. It is therefore imperative that Endocyte's stockholders are provided with the material information that has been omitted from the Proxy, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

B. **The Materially Incomplete and Misleading Proxy**

28. On June 15 2018, Endocyte filed the Proxy with the SEC in connection with the Proposed Transaction. The Proxy was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

29. With respect to the financial projections disclosed in the Proxy, (pages 40 of the Proxy), the Proxy fails to provide material information.

30. With respect to the *Discounted Cash Flow Analysis*, the Proxy also fails to disclose: (i) the projected terminal value for the Company; and (ii) the inputs and assumptions underlying the range of discount rates ranging from 13.0% to 15.0%.

7

31. With respect to the *Background of the Merger*, the Proxy fails to state whether the confidentiality agreements entered into with the six potential bidders contained "don't-ask-don't-waive" ("DADW") provisions, and whether those restrictive provisions are still in effect or if they expired when the Proposed Transaction was announced. Proxy at 19. The omission of the existence of the DADW provisions renders the Proxy misleading because it creates a false impression that any of the six potential bidders could have made a superior offer for the Company.

32. Stockholders require this material since the Board's unanimous recommendation that stockholders vote in favor of the Proposed Transaction was based, in part, on the following:

- reviewed certain internal financial and operating information with respect to the business, operations and prospects of the Company furnished to or discussed with BofA Merrill Lynch by the management of the Company, including certain financial forecasts relating to us prepared by the management of the Company, referred to herein as Company management forecasts and described in "The Proposed Merger–Forward-Looking Financial Information" beginning on page 40

\* \* \*

- discussed the past and current business, operations, financial condition and prospects of the Company with members of senior management of the Company;

\* \* \*

Proxy at 32.

33. In sum, the omission of the above-referenced information renders statements in the Proxy materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

34. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

35. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

36. Defendants have issued the Proxy with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy and the use of their name in the Proxy, which fails to provide critical information regarding, amongst other things: the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

37. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

38. Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

39. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **COUNT II**

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

40. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41. The Individual Defendants acted as controlling persons of Endocyte within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Endocyte, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly

or indirectly, the decision making of Endocyte, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

42. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

43. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Endocyte, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy.

44. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

45. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

46. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons,

these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

47. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

DATED: November 6, 2018                     Respectfully submitted,

**RILEY WILLIAMS & PIATT, LLC**

*/s/ William N. Riley*
William N. Riley (#14941-49)
James A. Piatt (#28320-49)
301 Massachusetts Avenue, Suite 300
Indianapolis, IN 46204
Tel.: (317) 633-5270
Fax: (317) 426-3348
wriley@rwp-law.com
jpiatt@rwp-law.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

Gloria Kui Melwani
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
270 Madison Avenue
New York, New York 10016
Tel: 212-545-4600
Fax: 212-686-0114
melwani@whafh.com